THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRYSTAL N. LAMB,

      Plaintiff,

v.

CLAYTON COUNTY SCHOOL
DISTRICT,

      Defendant.

CIVIL NO. 1:19-CV-00695-JSA

**PLAINTIFF CRYSTAL N. LAMB'S BRIEF IN SUPPORT OF
HER MOTION FOR AN AWARD OF
HER REASONABLE ATTORNEYS' FEES**

Plaintiff Crystal N. Lamb ("Plaintiff" or "Ms. Lamb") hereby requests, pursuant to F.R.C.P. 54(d)(2) and other applicable law, that the Court order Defendant Clayton County School District. ("Defendant" or "CCSD") to pay Plaintiff the attorney's fees she reasonably expended in obtaining relief in this case. Having obtained a favorable jury verdict on all of her claims, she is deemed the prevailing party under the Americans With Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101, *et seq*., the Rehabilitation Act, 29 U.S.C. § 794 *et seq*., and other applicable law. As the prevailing party, and for the reasons set forth in more detail below, Plaintiff respectfully requests that the Court award her $554,855 in attorneys' fees incurred through October 4, 2021,

plus fees anticipated to be incurred through final briefing of this Motion,[1] which will be submitted on the date Plaintiff submits her reply brief or on such other schedule as this Court might direct.[2]

## I.    INTRODUCTION

Plaintiff Crystal N. Lamb's jury verdict against Clayton County School District is the culmination of over three years of effort by her attorneys. Plaintiff engaged John T. Stembridge of Stembridge Law LLC and Lisa D. Taylor of Durham Taylor LLC [3] to represent her in May 2018 after her April 2018 termination.[4] In the course of representing Ms. Lamb, her counsel

---

[1]     The fees sought with this Motion do not include fees necessarily incurred in representing Ms. Lamb in response to Defendant CCSD's appeal to the United States Court of Appeals for the Eleventh Circuit.  Plaintiff will seek separate recovery of the fees incurred in relation to that appeal only upon prevailing in that court.

[2]     Attorneys should also be compensated for the time reasonably expended in seeking an award of fees. *Jonas v. Stack*, 758 F.2d 567 (11th Cir. 1985); *Johnson v. Coll. Of Univ. of Ala. Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983). Plaintiff's counsel therefore includes here the hours billed through October 4, 2021 and will later supplement her request with the actual fees incurred through filing her reply in support of this Motion.

[3]     Durham Taylor LLC and Stembridge Law LLC merged to form Stembridge Taylor LLC in January 2021.

[4]     John Stembridge advised Ms. Lamb on a pro bono basis from April 2018 until May 2018, in an effort to return Ms. Lamb to work with Defendant.  After Defendant refused to return Ms. Lamb to work, Ms. Lamb retained Mr. Stembridge and Ms. Taylor to represent her in this matter.  Mr. Stembridge is not seeking any fees for the time he incurred from April 2018 until May 2018.

assisted Ms. Lamb with litigating her claims with the United States Equal Employment Opportunity Commission ("EEOC"), filing a federal lawsuit, responding to numerous unsuccessful pre-trial motions filed by CCSD, conducting written discovery, preparing for and defending Ms. Lamb's deposition and preparing for and conducting the depositions of Lola Fonzie, Derrick Gilchrist, Leslie Harris, and Tanya Turnipseed, and analyzing and reviewing thousands of pages of documents and testimony obtained during the fact-investigation and discovery process.   Her counsel then successfully defeated Defendant's motion for summary judgment, preserving all of her claims for trial. Finally, Ms. Lamb and her counsel prepared for and participated in a five-day jury trial. The time records submitted with this Motion, and the declarations of Ms. Lamb's attorneys, reflect those efforts and attest to the necessity and reasonableness of the time devoted and the rates requested.[5]

Employment cases are difficult to bring and very difficult to win: many are lost at summary judgment; others are lost at trial; and still more are lost on appeal. Most plaintiffs, like Ms. Lamb in this case, cannot pay their

---

[5]     Plaintiff's counsels' itemized time entries are attached hereto as **Exhibit A**. The Declaration of John T. Stembridge is attached hereto as **Exhibit B**. The Declaration of Lisa D. Taylor is attached hereto as **Exhibit C**, and the Declaration of Holly Pierson is attached hereto as **Exhibit D**.

attorneys by the hour, and their quantifiable or recoverable damages (given statutory caps) are often easily surpassed by the cost of even a simple litigation process, much less one like this, involving multiple pretrial motions and disputed legal issues from the filing of the complaint to beyond trial. As such, their counsel must take on enormous risk to prosecute these cases on a contingent-fee basis. Because the EEOC can litigate only a very small percentage of the charges of discrimination that it receives, the private plaintiff's bar is by far the most important mechanism for enforcing federal employment laws. To ensure the availability of competent counsel to pursue claims on behalf of victims of civil rights and labor-law violations like Ms. Lamb, most federal employment laws, including the ADA and the Rehabilitation Act, provide for an award of attorney's fees and costs to a prevailing plaintiff.  Plaintiff is entitled to full recovery of her necessary fees and costs in this case, as explained below.

## II.    PROCEDURAL HISTORY

Ms. Lamb retained counsel shortly after being notified that her employment was going to be terminated, and after filing a charge with the EEOC on April 5, 2018. The EEOC investigated Ms. Lamb's claims, and on October 17, 2018, it issued its determination finding reasonable cause to

believe that Ms. Lamb had been discriminated and retaliated against in violation of the ADA. After issuing its finding, the EEOC proposed a Conciliation Agreement which would have required Defendant to pay Ms. Lamb estimated back pay and compensatory damages of $89,000, as well as to comply with specific training and reporting requirements. Defendant refused to engage in settlement discussions [Doc. 1-1][6], so the EEOC referred Ms. Lamb's charge to the U.S. Department of Justice, which issued a Notice of Right to Sue on February 19, 2019.

After the EEOC's conciliation attempts and the attempts of her private counsel to communicate with defense counsel regarding settlement failed, Ms. Lamb filed the initial complaint on February 8, 2019, alleging discrimination, failure to accommodate, and retaliation claims under the ADA [Doc. 1]. Then, after receiving the right-to-sue notice from the DOJ, Plaintiff filed an amended complaint on April 15, 2019 [Doc. 2], which referenced the right-to-sue notice and added parallel discrimination, failure to accommodate, and retaliation claims under the Rehabilitation Act ("RA").

From the outset, Defendant chose to litigate this case vigorously. For example, despite having exchanged correspondence prior to the Complaint

---

[6]     See Exhibit A, ¶18.

being served (and thus being well aware of its pendency), Defendant refused to acknowledge service of the complaint, forcing Plaintiff to retain a formal process server instead.[7] After finally perfecting service on Defendant (after having to make multiple attempts), Defendant answered but then filed a motion to dismiss, or in the alternative, for judgment on the pleadings [Doc 12]. Meanwhile, Plaintiff's counsel contacted defense counsel to request consent to Plaintiff's proposed amended complaint [Doc. 22-1], but Defendant refused. Plaintiff then filed a motion to amend [Doc. 22], yet despite refusing to consent, Defendant did not file a response to Plaintiff's motion to amend, and the motion to amend was granted [Doc. 27], while Defendant's motion for judgment on the pleadings was denied [Docs. 27 and 34][8]. As the litigation continued, Defendant's pattern of filing frivolous motions continued, including with a motion for protective order and multiple motions to strike discovery [Docs. 43, 44, and 73.].[9] All of Defendant's motions were denied [Doc. 77].

Plaintiff's counsel approached Defendant's counsel on multiple occasions in an attempt to discuss early resolution of the case, but Defendant refused to discuss settlement.[10]   Finally, on October 19, 2020, after the Court denied

---

[7]      See Exhibit A, ¶20.
[8]      *Id.*
[9]      *Id.*
[10]     *See* Exhibit A, ¶¶18-19.

Defendant's motion for summary judgment in its entirety, Defendant's counsel contacted Plaintiff's counsel and proposed the parties engage in mediation.[11] After the first mediation ended in an impasse, Defendant proposed the parties engage in a second mediation.[12] The second mediation resulted in an agreement to settle Plaintiff's claims for $250,000, but the School Board rejected the settlement, stating that it wanted to take Plaintiff's claims to trial.[13]

Trial proceeded as scheduled and lasted six days[14], ending in a jury verdict for the Plaintiff on every count. In order to ensure proper preparedness for a federal jury trial involving the important civil rights issues presented in this case, Plaintiff's counsel worked almost exclusively on this case alone for at least the week or more leading up to the week of trial, working seven days a week for often most of every waking hour.[15] During the week of trial, Plaintiff's counsel attended trial during the day, then continued further preparations

---

[11]    *Id*. at ¶19.

[12]    *Id*.

[13]    *Id*.

[14]    The parties conducted *voir dire* on Friday, June 4, 2021 and delivered opening statements on Monday, June 7, 2021, and the jury issued its verdict on Friday, June 11, 2021.

[15]    As referenced above, counsel's detailed billing records are included in the spreadsheet submitted with this brief as Exhibit A. Those records reflect billing entries every day in the two weeks leading up to the June 4 trial, some in excess of 10+ hours.

until well into the night. Ultimately, those efforts proved worthwhile, as the jury found in favor of Plaintiff and awarded a total of $450,000 in compensatory damages, which the Court subsequently reduced to $300,000 upon application of the ADA's statutory caps [Doc. 150].[16] The Court entered final judgment in that amount on August 10, 2021, and this timely motion for an award of fees followed.

## III.   ARGUMENT AND CITATION OF AUTHORITY

As the victor on all of her claims under the ADA and the Rehabilitation Act through a jury verdict, Ms. Lamb is the prevailing party. She is therefore entitled to an award of her reasonable attorney's fees under the fee-shifting provisions of those statutes, 42 U.S.C. § 12205 and 29 U.S.C. § 794a.   The reasonableness of attorney's fees under both statutory schemes is determined via the "lodestar" method: *i.e.*, the attorney's reasonable hourly rates multiplied by the number of hours they reasonably devoted to the representation. As Ms. Lamb shows below, supported by the declarations of her own counsel and of well-reputed counsel who practice in the same area, the time her counsel invested in this case was reasonable, and in fact, necessary to

---

[16]    In addition to compensatory damages, Ms. Lamb was also awarded $68,341.10 in equitable damages, plus pre-judgment interest, for a total award of $75,078.65, plus post-judgment interest which continues to accrue as of August 10, 2021.

achieving victory at trial. Ms. Lamb also shows through the same declarations that her attorneys' hourly rates are reasonable because they are in keeping with the rates charged by similarly experienced attorneys in the legal community of the Northern District of Georgia for similar work. Counsel also exercised billing judgment to remove excessive, redundant, or otherwise unnecessary hours. (*See* Declaration of John T. Stembridge, Exhibit B, ¶ 14; Declaration of Lisa T. Taylor, Exhibit C, ¶ 10.) Plaintiff therefore requests attorneys' fees in the amount of $554,855 for the work of her attorneys and paralegal at Stembridge Taylor LLC and her trial attorney at Pierson Law LLC.

### A.    Plaintiff is the Prevailing Party

Prevailing on "any significant issue in the litigation which achieves some of the benefit the part[y] sought in bring[ing] suit" compels characterization of that party as the prevailing party. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 109 S. Ct. 1486, 1493 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). "[A]t minimum, to be considered a prevailing party . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).   Since Ms. Lamb

prevailed on all three of the claims she brought to trial, there is no reasonable basis to dispute that Ms. Lamb is a prevailing party.

Because Ms. Lamb is a prevailing party entitled to attorney's fees and costs under the statutes under which she prevailed, the lodestar methodology applies to determine the reasonable fees she should recover. *Penn v. Delaware Valley Citizens Council*, 478 U.S. 546, 565 (1986) (explaining that the "strong presumption that the lodestar figure . . . represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute"); *Walters v. City of Atlanta*, 652 F. Supp. 755, 757-58 (N.D. Ga.1985); *see also Christ Liberty Family Life Ctr. v. City of Avondale Estates, Ga.*, Civil Action No. 1:10–CV–2326–CAP, 2013 WL 1896311, *5 (N.D. Ga. March 29, 2013) ("[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve.") (quoting *Bivins v. Wrap It Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008)). The lodestar amount is determined by multiplying a reasonable hourly rate by the hours reasonably expended and then accounting for other considerations that may require an enhancement or reduction of the fee. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). The standard of reasonableness in determining the amount of attorney's fees is to be given "liberal interpretation." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983).

**B.    The Time Plaintiff's Attorneys Invested in this Matter was Reasonable and Necessary to Achieve Victory**

**1.    The Time Recorded**

In determining whether counsel expended a reasonable amount of time on a case, courts look first to the time the attorneys expended as reflected in their time records. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The time for which attorneys should be compensated includes not just time spent on the litigation, but also the time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *North Carolina Dept. of Transp. V. Crest Street Community Council, Inc.*, 479 U.S. 6, 15 (1986).  During their more than three years spent representing Ms. Lamb, her attorneys devoted the following time to the case through October 4, 2021: 776.7 hours for Lead Counsel John T. Stembridge; 324.1 hours for co-counsel Lisa D. Taylor; 89.9 hours for trial counsel Holly A. Pierson; and 100.5 hours for paralegal Victoria Engleman.

As to the reasonableness of the time recorded, it is axiomatic that counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits; however, counsel's certification that the work itemized has, in fact, been performed is "entitled to considerable weight on the issue of time required . . ." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir.

1988). In fact, because counsel's sworn testimony is of such importance, in order for the time to be reduced, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Perkins*, 847 F.2d at 738.

In support of this motion, Ms. Lamb's attorneys have each submitted declarations detailing their work on the case, attesting that they contemporaneously recorded their time, and stating that, in their professional judgment, the time they spent was reasonable and necessary to the case (*See* Attachments B, C and D.) Counsels' hours represent a specific division of labor[17] and were reduced for any time that could be construed as "excessive, redundant, or inefficient." *Id*.; *see also In Re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 354 (N.D. Ga. 1993).

Before submitting this motion, both Mr. Stembridge and Ms. Taylor reviewed each time entry for himself or herself, for his or her law partner, for Ms. Pierson, and for their paralegal Ms. Engleman, to ensure that they had exercised sound billing judgment when allocating and recording their time. (*See* Stembridge Dec., Exh. B, ¶¶ 14, 17; Taylor Dec. ¶ 10.) Counsel removed

---

[17]    "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the unique contributions of each lawyer." *Norman*, 836 F.2d at 1302.

from the billing statement any entries that were duplicative or which reflected hours not reasonably necessary for the effective representation of the Plaintiff, of which there were very few because Mr. Stembridge, Ms. Taylor, and Ms. Engleman practice law very efficiently and keep real time records of their time in all matters. (*Id.* at ¶14.)  In light of this diligence, and as affirmed by neutral third-party declarants Cheryl Legare, an experienced attorney who dedicates her practice to representing plaintiffs in employment-law matters within the Northern District of Georgia (*see* **Exh. E**), and William Custer, an experienced attorney who dedicates his practice to litigation and dispute resolution, including labor and employment issues, within the Northern District of Georgia (*see* **Exh. F**), the time recorded by Plaintiff's counsel is extremely reasonable.

### 2.    The Court Should Award all of the Hours Requested.

In addition to considering the declarations of counsel and legal experts, the Court may (but is not obligated to) consider any or all of the factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1979) (abrogated to extent that contingent-fee arrangement does not affect the lodestar calculation);[18] *see also Hensley*, 461 U.S. at 424; *Norman*, 836 F.2d at

---

[18]    Fifth Circuit decisions issued prior to September 30, 1981 are binding on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d

1299; *Loranger v. Stierheim*, 10 F.3d 776, 781 & n. 6 (11th Cir. 1994) (citing with approval the *Johnson* "factors that district courts should balance in fashioning fee awards" although noting that the *Johnson* "balancing test has since been displaced by the lodestar formula . . . [for use] in establishing a reasonable hourly rate"). The *Johnson* court identified four relevant factors: the time and labor required, the novelty and difficulty of the case, the amount involved and the result obtained, and the skill of the attorneys required to perform the legal service properly.  Although it is not necessary for all four factors to lean in favor of the Plaintiff for all fees submitted to be awarded, they do all weigh in Plaintiff's favor here and supply further reason, in addition to the testimony of her counsel discussed above, that Ms. Lamb be awarded all of the time her counsel have invested in this case. *See, generally, Norman*, 836 F.2d at 1299-1302.

### a.    Time and Labor Required

Ms. Lamb's attorneys submitted declarations attesting that the time they spent on the case was: (a) recorded contemporaneously, and (b) reasonable and necessary to the representation. (*See* Exhs. B, C, and D). Even as to trial, Mr. Stembridge, Ms. Taylor, and Ms. Pierson divided duties in a matter that

---

1206, 1207 (11th Cir. 1981).

ensured all necessary tasks were completed well and in a timely manner, but without duplication of efforts. The time records attached as Exhibit A reflect this efficient division of labor throughout the entire case.

Conducting that analysis here, it is clear that the time and labor expended by Plaintiff's counsel were entirely reasonable to litigate and fully try this case to a jury, and that she should therefore be awarded reasonable fees for all of those hours her attorneys worked.

### b.       The Novelty or Difficulty of the Issues

While Ms. Lamb's claims did not present issues of first impression, the case, like all employment cases, was difficult and risky. Employment litigation requires specialized skill and is considered a complex area of practice. Plaintiff-side employment cases are considered especially difficult: there are only a handful of attorneys in Atlanta who, like Plaintiff's counsel, devote a significant amount of time to these cases and have developed specialized skill and experience in the area.

Plaintiff's claims required her counsel to show that she suffered from a disability under the ADA; that Defendant knew about Ms. Lamb's disability and her requests for accommodation; that Defendant failed to engage in the interactive process with Ms. Lamb; that there were reasonable accommodations available that Defendant could have considered providing to

Ms. Lamb; that Defendant failed to provide (or, in this case, even consider) reasonable accommodations; that Defendant terminated Ms. Lamb's employment because of her disability and her requests for an accommodation; and that Defendant should be liable to Ms. Lamb and the jury should award her damages, among other things. Plaintiff's counsel succeeded in proving every single one of these components, even with experienced counsel defending the case.

Many times, as here, cases take years to be completed, during which time witnesses disappear, memories fade, and often, the law changes. Thus, it is difficult to evaluate a potential claim from the very beginning, which creates considerable risk. Moreover, a tremendous expenditure of time is required not just to become familiar with the facts of a case and to identify the legal issues those facts implicate, but also to keep up with the ongoing changes in the law and the facts as they develop through discovery. In this particular case, the complexities of the law and the skills necessary to deal with them cannot be underestimated, given that Plaintiff prevailed on all of her claims against Defendant at trial. For these reasons, the Court should exercise its discretion in favor of a full award of all fees and costs.

### c. Results Obtained

The jury found in Plaintiff's favor on every claim presented to them, finding specifically that Defendant discriminated against Ms. Lamb based on her disability, failed to accommodate Ms. Lamb's disability, and retaliated against Ms. Lamb for seeking accommodations for her disability. Under these circumstances, the ultimate determination to be made is the extent to which the plaintiff "prevailed." *Hensley*, 461 U.S. at 435.  In addition, although the amount the jury awarded to Plaintiff is substantial, it is worth noting that the Supreme Court has soundly rejected the argument that attorney's fees must necessarily be in proportion to the amount of money recovered by the plaintiff, reasoning that the public benefit advanced by civil rights litigation is far more important than the dollar amount rewarded. *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1989).

It is also important to highlight the role of private enforcement of civil rights laws. It has been held that the public good is "most meaningfully served by the day-to-day private enforcement of [civil] rights, which secures compliance and deters future violations." *Quarantion v. Tiffany & Co.*, 166 F.3d 422, 426 (2nd Cir. 1999). In this case, Defendant intentionally discriminated against Plaintiff because of her disability. Its employees carried out these actions, and its management officials condoned and

approved them. The jury award to Plaintiff will deter future improper conduct by Defendant[19] and will represent a "specific spill-over of benefits for non-parties," thereby buttressing the significance of the relief and an award of a full compensatory fee. *Popham*, 820 F.2d at 1580.

### d. Skills of the Attorneys

Plaintiff's attorneys have submitted declarations attesting to their experience and expertise in plaintiff's employment cases. Mr. Stembridge and Ms. Taylor each devote much or all their practice to employment law, including the representation of management and of individuals, while Ms. Pierson dedicates the majority of her practice to trial and appellate litigation, and has tried numerous cases in federal court.

Thus, all four of the *Johnson* factors, should the Court consider them, weigh in favor of awarding Plaintiff all of the reasonable fees sought by her counsel in this case. It was only upon investing the reasonable hours expended that Plaintiff's attorneys, who are skilled and experienced in employment law, achieved excellent results at trial, despite this being a

---

[19]    Indeed, during informal discussions with the jurors after they rendered their verdict and were released from service, the jurors specifically stated that they hoped the verdict they rendered, including but not limited to the amount of compensatory damages awarded, would incentivize the Clayton County School District to bring its policies and practices into compliance with modern anti-discrimination laws.

difficult type of case to litigate. Under all of the applicable lodestar standards, the time worked by Plaintiff's counsel was entirely reasonable and all hours billed should therefore be compensated.

## C.    Plaintiff's Attorneys' Rates are Reasonable

The lodestar "reasonable rate" is "based on reasonable standards in the community for attorneys of similar experience in handling similar cases." *In re Domestic Air Transp. Litigation*, 148 F.R.D. 297, 355 (N.D. Ga. 1993). Applying the attorneys' *current* rates to *all* of the work done in the case, as Plaintiff's counsel have done in their billing statements presented here, "properly accounts for inflation and delay in receipt of payment …" *Id; Missouri v. Jenkins*, 109 S. Ct. 2463, 2469 (1989) (referencing "an appropriate adjustment for delay in payment -- whether by application of current rather than historic hourly rates or otherwise"). Plaintiff requests her counsel be awarded the following rates: Mr. Stembridge, $450 per hour; Ms. Taylor, $450 per hour; Ms. Pierson, $550 per hour; paralegal Victoria Engleman, $100 per hour.[20]

---

[20]    To further support the reasonableness of the rates sought here, this Court just last month approved the same $450 hourly rate sought here for Mr. Stembridge and Ms. Taylor, and what is effectively a $625 hourly rate for Ms. Pierson, in its order granting plaintiff's motion for attorneys' fees in *Johnston v. Pye Cars of Dalton Inc. et al*, No. 4:19-CV-00126-WEJ (N.D. Ga) [Doc. 106] – a case tried just ~two weeks prior to this one and which was litigated over essentially the exact same time period. *See* Exhibit A, ¶14, and Exhibit D,

No discount of the rates is justified, and Defendant cannot show that these rates are in any manner unreasonable. However, should the Court consider any of the optional *Johnson* factors pertaining to rates -- customary fee; the experience, reputation and ability of the attorneys; the undesirability of the case; preclusion of other employment; and the nature and length of the professional relationship with the client -- they each will favor awarding the rates Plaintiff's counsel request.

## 1.    The Customary Fee

Under fee shifting statutes, reasonable hourly rates are the prevailing market rates "in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is ordinarily defined as the locale where the case was filed. *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994). As stated in the declarations of Plaintiff's counsel and the Declarations of Cheryl A. Legare (Exhibit E) and William Custer (Exhibit F) the rates requested in this case are well within the range of reasonable rates for attorneys with their experience and expertise in the Northern District of Georgia.

---

¶12.

2.     **The Experience, Reputation and Ability of the Attorneys**

In assessing a reasonable hourly rate for Plaintiff's counsel, this Court must evaluate the attorneys' "knowledge of trial practice and knowledge of the substantive law." *Norman*, 836 F.2d at 1301. The experience, reputation and ability of the lawyers is set forth in counsel's declarations. *See* Exhibits B, C, D, E, and F.  Plaintiff's counsels' collective experience includes over sixty combined years' experience devoted to employment litigation and individual skills developed in years of employment and other litigation work.

3.     **The Undesirability of the Case**

Courts have recognized that civil rights and employment cases are undesirable and thus warrant payment of a higher fee in order to attract competent counsel. *Johnson*, 488 F.2d at 719. Some of the most common reasons that civil rights and employment discrimination cases are viewed as undesirable by many members of the Bar include the scrutiny of the attorney's fee phase, the long delay and uncertainty in payment, the inability of most plaintiffs to pay for routine expenses and attorney's fees, the fact that appeals are required in a high number of cases, and the fact that identification of the attorney with such cases tends to discourage other types of clients from engaging his or her services. The Court should consider the

inherent disparity of resources between Ms. Lamb and those of the Defendant, a disparity which contributes significantly to the undesirability of these cases. For example, a plaintiff will incur significant costs in order to vigorously pursue her claims, but often she will not have the funds to fully pay costs as they are accrued; hence, the plaintiff's counsel may not always recover their costs until a settlement is reached or, as in this case, it is won at trial and a court order to pay is entered. This is quite the opposite for Defendant with vast resources, and typically with litigation insurance coverage, which can more readily bear the financial burdens of lengthy litigation. Such adverse economic practicalities make handling employment discrimination cases inherently distasteful.

### 4.    Preclusion of Other Employment

Stembridge Taylor has just two attorneys, Mr. Stembridge and Ms. Taylor, who both not only carry a full load of client work but also share in management of the firm's operations. The firm invested over 1,200 professional hours in this case, receiving contemporaneous payment for none of them. The hours that Plaintiff's attorneys worked on this matter represent a major investment of resources that might have been devoted to other matters, many of which would likely have paid by the hour contemporaneous with the work being performed.  Indeed, to fully comprehend the significance

of the risk, one need only imagine how few defense firms would be willing to defend these cases if they had to forego payment for their work for over three years and their payment was conditioned on victory.

### 5.    The Nature and Length of the Professional Relationship

Plaintiff's attorneys have represented Ms. Lamb since June 2018. They prosecuted her case at the EEOC, into federal court, and through a jury trial. Unlike in many other areas of practice where such a long professional relationship would carry the prospect of more business from the client in the future, plaintiff's attorneys do not enjoy such benefit. Instead, the hope is that Ms. Lamb will never require the firm's services again. Accordingly, the plaintiff's employment lawyer can expect only one fee from a client's case if he or she is successful. The award of that full fee would go far in leveling what would otherwise be a vastly uneven playing field.[21]

### D.    Awards in Similar Cases

Finally, the reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without this circuit. *Johnson*,

---

[21]    The former Fifth Circuit has stated that a lawyer "may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson*, 488 F.2d at 719. In employment cases, this factor is significant for the reason that lawyers taking such cases rarely develop any longstanding relationship with a client in terms of repeat business.

488 F.2d 714, 719 (5th Cir. 1974). In consideration of the Plaintiff being the prevailing party, combined with the amount of time and costs necessary to obtain that result on her behalf, an award of attorney's fees in the amount of $554,855 is in line with the rates and awards in similar cases. *See, e.g.,* *Martin v. Eli Lilly*, 1:12-cv-01623-CAP, Doc. 264 (April 25, 2016) (Pannell, J.) (case reversed and remanded on other grounds as described in *Martin v. Eli Lilly & Co.*, 702 F. App'x 952 (11th Cir. 2017) (finding partner rates of $425, associate rate of $350, and paralegal rate of $150 to be reasonable in an FMLA/ADA discrimination and retaliation case and awarding a total of $294,760.00 in attorney's fees); *Allen v. Banks Co. Ga.*, 2:16-CV-0076-RWS (Dec. 11, 2018) (finding partner rate of $425 and associate rate of $350 reasonable in an FMLA/ADA discrimination, failure to accommodate and retaliation case and awarding a total of $330,042.50 in attorney's fees); *Painter v. Fulton County, GA et al*, 1:08-cv- 01989-TCB, Doc. 255 (May 11, 2010) (Batten, J.) (finding partner rate of $450 per hour to be reasonable and associate rate of $275 per hour in a race discrimination and retaliation case reasonable for a total award of $376,552.93); *Alger v. Prime Rest. Mgmt., LLC*, No. 1:15-CV-567-WSD-JCF, 2016 WL 11440143, at *8 (N.D. Ga. June 9, 2016) (Fuller, J.), *report and recommendation adopted,* No. 1:15-CV-567-WSD, 2016 WL 3741984 (N.D. Ga. July 13, 2016) (partner rates of $450 and associate

rate of $250 per hour reasonable in a pregnancy discrimination case); *Taylor v. Fulton Cty.*, No. 1:08-CV-3242-RLV- CCH, 2012 WL 13075231, at *3 (N.D. Ga. Jan. 31, 2012), *report and recommendation adopted,* No. 1:08-CV-3242-RLV, 2012 WL 13072119 (N.D. Ga. Feb. 29, 2012) (finding partner rate of $400 per hour appropriate and reasonable in a sexual harassment case for a total award of $244,494.90); *Mulugeta v. TAS of Atlanta, LLC*, No. 1:17-CV-03583-LMM, 2019 WL 8277247, at *1 (N.D. Ga. Dec. 13, 2019) (finding $425/hour rates of two partners reasonable in settled FLSA case); *Nelson v. PJ Cheese, Inc.*, No. 4:20-CV-00242-JPB, 2021 WL 2493252, at *2 (N.D. Ga. June 17, 2021) (finding reasonable partner rates of $500/hour and $450/hour in FLSA case).  *See also* Exhibit E, Legare Dec., and Exhibit F, Custer Dec. (discussing fee recoveries comparable to that requested here in similar cases).

## IV.    CONCLUSION

Ms. Lamb requests that the Court fully compensate her counsel for the efforts that allowed her to fully prevail in this case by awarding her $554,855 in attorney's fees, plus any additional fees incurred in connection with this motion.[22] *See Jonas v. Stack*, 758 F.2d 567 (11th Cir. 1985).

---

[22]    Plaintiff will seek fees incurred in responding to Defendant's appeal separately.

Respectfully submitted this 4th day of October, 2021.

/s/ John T. Stembridge
John T. Stembridge
Georgia Bar No. 678605
Lisa D. Taylor
Georgia Bar No. 235529
**Stembridge Taylor, LLC**
2951 Piedmont Road, Suite 200
Atlanta, Georgia  30305
Telephone: (404) 604-2691
john@stembridgetaylor.com
lisa@stembridgetaylor.com

Holly A. Pierson
Georgia Bar No. 579655
**Pierson Law LLC**
3127 Maple Drive NE
Atlanta, GA 30305
Telephone: 404-353-2316
hpierson@piersonlawllc.com

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiff hereby certifies that this brief was prepared in accordance with the font and type limitations of N.D. Ga. L. R. 5.1(B), Century Schoolbook 13 point.

/s/ John T. Stembridge
John T. Stembridge
Georgia Bar No. 678605

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I filed the foregoing Plaintiff Crystal N. Lamb's

Brief in Support of Motion for an Award of Attorney's Fees, using the Court's

CM/ECF system which will generate service on all counsel of record.


Dated:        October 4, 2021

*/s/ John T. Stembridge*
John T. Stembridge
Georgia Bar No. 678605
