# EXHIBIT B

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRYSTAL N. LAMB,

       Plaintiff,

v.

CLAYTON COUNTY SCHOOL
DISTRICT,

       Defendant.

CIVIL NO. 1:19-CV-00695-JSA

## DECLARATION OF JOHN T. STEMBRIDGE

My name is John Stembridge. I am over the age of twenty-one (21) years and competent to testify in the matters contained herein.  This Declaration is based upon my personal knowledge:

1.

I have represented the Plaintiff Crystal N. Lamb in this case since just after her termination from Defendant Clayton County School District in April 2018.  Ms. Lamb retained me through my predecessor law firm, Stembridge Law LLC, at which time I associated Lisa Taylor of Durham Taylor LLC to work on the case with me. Our firms merged to form Stembridge Taylor LLC in January 2021.

2.

I have been admitted to practice law in the State of Georgia since 2003. I am a member in good standing of the State Bar of Georgia. I am admitted to practice before the Georgia Supreme Court, the Georgia Court of Appeals, all trial courts in Georgia, the United States Court of Appeals for the Eleventh Circuit, and the United States District Courts for the Northern, Middle, and Southern Districts of Georgia. I am in good standing in all the above-listed courts, and I have never been the subject of any disciplinary proceeding.

3.

I earned a Bachelor of Arts degree from the University of Georgia in 1993. I graduated, *cum laude*, from the University of Georgia School of Law in 2003. During law school, I served as Articles Editor for the *Georgia Journal of International and Comparative Law*, competed at the American Bar Association's National Appellate Advocacy Competition, competed at the Vanderbilt First Amendment Moot Court Competition, and served on the Moot Court Board.

4.

From January 1994 to August 2000, I was employed by Bank of America, where I worked as a retail bank branch manager, a regional sales manager, and

finally in the commercial bank where I was assigned a corporate loan portfolio of approximately 25 clients.

5.

I have practiced law for approximately eighteen years and my entire practice has been devoted to employment law. From approximately 2003 through 2005, I was an associate with the firm of Ford & Harrison, LLP, which is a national firm that focuses on labor and employment law.

6.

From approximately 2005 through 2010, I was an associate with the firm of Littler Mendelson, P.C., and from approximately 2010 through May 2012, I was a shareholder with the firm of Littler Mendelson, P.C. Littler Mendelson is a firm with more than 1,600 attorneys in over 100 offices that specializes in labor and employment law. While with Littler Mendelson, the vast majority of my practice was dedicated to litigating single plaintiff and multi-plaintiff employment related lawsuits, and class and collective actions brought under the FLSA and/or related state laws.

7.

For example, I represented the Defendant or Defendants in the single

plaintiff and multi-plaintiff cases, *Boston v. MasTec Services Company, Inc.*, 8:07-cv-01312-RAL-MAP (M.D. Fla. July 27, 2007); *Byars v. Pawnmart, Inc. et al.*, 1:07-cv-03174-JEC (N.D. Ga. Dec. 20, 2007); *Laymon v. Gentiva*, 2:08-cv-00710-JES-SPC (M.D. Fla. Sept. 15, 2008); *Malcolm v. MasTec, Inc.*, 3:09-cv-00035-HLA-JRK (M.D. Fla. Jan. 13, 2009); *Hampton, et al. v. MasTec North America, Inc.*, 1:09-cv-00198-TWT (N.D. Ga. Jan. 23, 2009); *Walker v. MasTec, Inc., et al.*, 3:10-cv-00146-HEH (E.D. Va. March 8, 2010); *Bernard v. MasTec Services Company, Inc.*, 3:10-cv-00626 (N.D. Tex. March 31, 2010); *Edens, et al. v. State Farm Mutual Automobile Insurance Company*, 1:10-cv-02093-CAP (N.D. Ga. July 6, 2010); *Filipov v. American Residential Services, L.L.C.*, 1:11-cv-00366-JOF (N.D. Ga. Feb. 5, 2011); *Nguyen v. MasTec Services Company, Inc., et al.*, 1:11-cv-00120-SS (W.D. Tex. Feb. 15, 2011); *Salamaya v. MasTec Services Company, Inc.*, 6:11-cv-01633-PCF-GJK (M.D. Fla. Oct. 11, 2011); *Barnes, et al. v. United Home Care of North Atlanta, Inc., et al.*, 1:11-cv-03967-RWS (N.D. Ga. Nov. 17, 2011); *Hein v. Nsoro MasTec, LLC, et al.*, 2:12-cv-00004 (E.D.N.C. Jan. 20, 2012).

8.

Examples of class and collective actions in which I represented the Defendant or Defendants include, *Barrosa v. DirecTV, Inc., et al.*, 1:06-cv-20503-JAL (S.D. Fla. Feb. 27, 2006); *Radinski, et al. v. Apex Digitial, LLC, et al.*, 1:07-cv-00571 (N.D. Ill. Jan. 20, 2007); *Tyson Foods MDL*, 4:07-md-01854-CDL (M.D. Ga. Aug. 28, 2007); *Williams v. MasTec North America, Inc. et al.*, 1:07-cv-22520-ASG (S.D. Fla. Sept. 25, 2007);  *Arce v. MasTec North America, Inc. et al*., 1:08-cv-22029-UU (S.D. Fla. July 17, 2008); *Powers, et al. v. Centennial Communications Corp.*, 1:08-cv-00208-PPS-CAN (N.D. Ind. Sept. 11, 2008); *Youngblood, et al. v. Family Dollar Stores, Inc. et al.*, 1:09-cv-03176-RMB-FM (S.D.N.Y. April 2, 2009); *Carter, et al. v. MasTec Services Company, Inc. et al.*, 2:09-cv-02721-RMG (D.S.C. Oct. 19, 2009); *Delano, et al. v. MasTec, Inc., et al.*, 8:10-cv-00320-JDW-MAP (Jan. 29, 2010); *Lopez, et al. v. MasTec, Inc.*, 1:10-cv-20361-UU (Feb. 4, 2010); *Barker, et al. v. Family Dollar, Inc.*, (W.D. Ky. March 15, 2010); *Turean v. MasTec, Inc. et al.*, 0:10-cv-60494-JIC (S.D. Fla. April 1, 2010); *Rancharan v. Family Dollar Stores, Inc.*, 1:10-cv-07580-RMB-FM (S.D.N.Y. Oct. 4, 2010); *DeAnna Putnam v. Healthworks Fitness Centers, Inc., et al.*, Case No. SUCV2011-04423 (Mass. Super. Ct., Dec. 6, 2011).

9.

In 2012, I left Littler Mendelson to form the firm Andrews & Stembridge, LLC. In 2016, I formed Stembridge Law, LLC, and in January 2021 I formed Stembridge Taylor LLC with my partner and co-owner, Lisa Taylor. Since practicing in my own firms, I have represented plaintiffs and defendants in many employment related matters.  For example, in addition to this case, some of the cases I have represented plaintiffs are *Register, et al. v. Laughing Out Loud Restaurant Group, LLC, et al.*, 1:10-cv-03861-JEC (N.D. Ga.); *Dudley v. Morgan Keegan & Co., Inc.*, 1:11-cv-02700-RLV (N.D. Ga.); *Lamport v. Facility Holdings Corp.*, 1;12-cv-987-CAP (N.D. Ga.); *Brown v. Spalding Co.*, 3:12-cv-169-TCB (N.D. Ga.); *Merida v. Wireless Vision LLC*, 1:18-cv-569-SCJ (N.D. Ga.); *Reynolds v. Elixir Door and Metals Co.*, 7:16-cv-220 (M.D. Ga.); *Chandler v. Pye Automotive Group LLC, et al.*, No. 4:17-CV-0086-HJM-WEJ (N.D. Ga.); *Claros & Steakley v. Taylor Lee & Associates et al*, No. 1:18-CV-02204-CAP-WEJ (N.D. Ga.); *Franco v. Aaron's, Inc.*, No. 1:19-CV-182-CAP-LTW (N.D. Ga.); *Caruso v. American Family Care Georgia, LLC*, No. 1:20-CV-04775-ELR-RDC (N.D. Ga.); and *Johnston v. Pye Cars of Dalton Inc. et al*, No. 4:19-CV-00126-WEJ (N.D. Ga.).

10.

My hourly rate is $450.00 per hour.  As evidence of the reasonableness of my hourly rate, when I left Littler Mendelson in May 2012, my hourly rate was $375.00 per hour. My hourly rate is consistent with the rates I charge in other comparable matters and which clients actually pay in other matters.  More specifically, this is the rate that I charge in contingency-based employment litigation, and this rate is used to calculate my fees at the time of resolution under the terms of my standard contingency engagement, whether based on an hourly recovery or a percentage recovery.  I charge a slightly lower rate to clients who pay by the hour as the matter progresses (as opposed to contingency matters), and this difference in rate is intended to account for the significant risk involved in devoting time to litigating contingency cases without being paid, sometimes, including as here, for several years.

11.

Lisa Taylor is my co-counsel in this matter and I have worked with her on every phase of this case, beginning with consultation on the case and litigation strategy and culminating in co-counseling with her at the jury trial.  Our strategizing and collaboration have been instrumental in our mutually successful representation

of Ms. Lamb.  Because we have similar experience levels, our rates are the same at $450 per hour.

## 12.

To further support the reasonableness of the $450 hourly rate being sought, in its order granting plaintiff's motion for attorneys' fees, the Court in *Johnston v. Pye Cars of Dalton Inc. et al*, No. 4:19-CV-00126-WEJ (N.D. Ga.), approved a rate of $450 an hour for both me and Ms. Taylor [Doc. 106].

## 13.

My experience with individuals seeking representation in employment discrimination and retaliation cases demonstrates that those individuals face substantial difficulty in securing competent counsel and would be unable to do so, in part, due to their lack of financial resources, without a contingent fee agreement. In this case our fee agreement is a contingent fee agreement. We took this case because we believed that Ms. Lamb had been unlawfully discriminated against based on her disability and retaliated against for seeking reasonable accommodations. During my work on this case, I set aside hourly fee work in order to prosecute this matter.

14.

Lisa Taylor and I utilize the Clio practice management system and track our billable hours in Clio on a "real time" basis, ensuring the accuracy of the records kept.  I reviewed the time entries in this case for both myself and Ms. Taylor, which were downloaded into the included spreadsheet directly from our firm's Clio account, to ensure that all timekeepers on this matter had exercised sound billing judgment when allocating and recording their time.  As part of that process, I also removed any excessive, redundant, or otherwise unnecessary hours or portions thereof (of which there were almost none).  Thus, all of the time we billed on this case was, in my judgment, necessary to provide proper representation of Ms. Lamb.

15.

As the trial date in this case approached, my co-counsel Lisa Taylor and I made the decision to engage Holly Pierson as trial counsel. By virtue of having served as an Assistant US Attorney for a number of years, Holly Pierson has extensive trial experience and assisted us greatly with anticipating and addressing evidentiary issues, preparing Ms. Lamb and other witnesses to testify at trial, and developing an overall trial strategy. Ms. Pierson's services were delivered efficiently and were integral to our success at trial. I also reviewed the time billed by Ms.

Pierson, and the time billed by her on this case was, in my judgment, reasonable and necessary to provide proper representation of Ms. Lamb

16.

Included with the filing of this Declaration is a true and correct copy of the itemized time entries for this case, totaling 1,291.2 hours and $554,855 in resultant fees.  Those records reflect 776.7 hours billed by me, 324.1 hours billed by co-counsel Lisa Taylor, 89.9 hours billed by our trial co-counsel Holly Pierson, and 100.5 hours billed by our paralegal Victoria Engleman. That time was absolutely necessary to prosecute this case and is a reasonable fee for successfully litigating a contested employment discrimination case, which involved proceedings before the EEOC, preparation and filing of pleadings and the conduct of full discovery, and a complete jury trial ending in a favorable jury verdict yielding a maximum recovery under the ADA and Rehabilitation Act.

17.

In my opinion, the rates charged for me and my co-counsel, Lisa Taylor, and our trial co-counsel Holly Pierson, the amount of time spent by our firm was reasonable and customary for the various specific tasks, and was reasonable and customary for the complexity of issues involved in this litigation. I note that in

reviewing my fees, I exercised billing judgment and wrote off all time I felt was redundant or unnecessary in the prosecution of this case.

18.

In attempt to resolve this case prior to incurring significant fees, Plaintiff attempted on multiple occasions to engage Defendant in settlement discussions. In October 2018, after Defendant failed to respond to the EEOC's efforts to engage Defendant in its conciliation process[1], I sent Winston Denmark an email to initiate settlement discussions.[2] On November 7, 2018, I received a letter from an attorney with Mr. Denmark's firm, informing me that Defendant "denies liability" and "has decided not to conciliate this matter."[3] On November 29, 2019, following the exchange of written discovery, but prior to taking any depositions, I made another attempt to initiate settlement discussions by sending Defendant's counsel a settlement demand letter on November 27, 2019.[4] On December 10, 2019, the day before I was scheduled to take the first depositions in this case, I received a text

---

[1] See November 2018 email from the EEOC investigator to John Stembridge attached as Exhibit 1.

[2] See the October 30, 2018 email from John Stembridge to Winston Denmark attached as Exhibit 2.

[3] See the November 7, 2018 letter from Christa L. Freeman to John Stembridge attached as Exhibit 3.

[4] See the November 27, 2019 letter from John Stembridge to Valorri Jones attached as Exhibit 4.

message from Valorri Jones stating that her client had reviewed the November 27 letter and was requesting a monetary demand. I responded with a $190,000 demand, which I agreed to keep open until depositions commenced the next day. Ms. Jones acknowledged the receipt of the demand via text message, but never responded with a counter-offer.

19.

On October 19, 2020, two years after I first approached Defense counsel in an attempt to discuss settlement, and after the Court had denied Defendant's motion for summary judgment, Defendant proposed mediation.[5] On Saturday, December 12, 2020, the parties attended mediation with Gino Brogdon, which ultimately ended in an impasse. On February 6, 2021, Defendant proposed a second mediation, again with Judge Brogdon serving as the mediator, which was held on March 15, 2021, and which ended with the parties agreeing to settle Plaintiff's claims for $250,000.[6] On April 1, 2021, I received a letter stating that the Clayton County School Board

---

[5] See the October 19, 2020 email exchange between Valorri Jones and John Stembridge regarding mediation and Plaintiff's December 2019 settlement demand attached as Exhibit 5.

[6] Doc. 111 at 2-4, and the exhibits attached to that pleading, provides a summary of the March 15, 2021 mediation and Defendant's subsequent rejection of the parties' tentative agreement.

voted and "refused to consent to settle this matter for $250,000" and "wishes to proceed with taking this case to trial." [Doc. 111 at Exh. 3.]

20.

Not only did Defendant refuse to engage in settlement discussions until after its motion for summary judgment was denied, it also pursued multiple unsuccessful motions throughout discovery. After refusing to accept service of the Complaint[7], Defendant chose to file multiple motions, which Plaintiff deemed unnecessary, and which were ultimately denied by the Court. Defendant filed a motion to dismiss [Doc. 12], which was denied [Docs. 27 and 34]. Defendant also pursued a motion for protective order [Doc. 43], and motions to strike [Docs. 44 and 73], all of which were denied by the Court [Doc. 77].

I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

Signed on this 4th day of October, 2021.

/s/ John T. Stembridge
John T. Stembridge

---

[7] See April 2019 letter from Janet Scott to John Stembridge attached as Exhibit 6.

# EXHIBIT 1

**John Stembridge**

---

**From:**          LUCY HAMER <LUCY.HAMER@EEOC.GOV>
**Sent:**          Wednesday, November 7, 2018 11:50 AM
**To:**            John Stembridge
**Subject:**       RE: Crystal Lamb/Clayton County

Hi John,

It's been crickets from the county. Let me reach out one more time – I hesitate to fail a conciliation effort before Respondent responds at all to the invitation. Of course, should they continue to not answer my messages, we'll have no choice but to move on.

Lucy

Lucy K. Hamer
Federal Investigator
US EEOC- Atlanta District Office
100 Alabama St. NW, Ste. 4R30
Atlanta, GA 30303
t: (404) 562-6580
f: (404) 562-6909

CONFIDENTIALITY NOTICE

This communication is intended for the sole use of the person to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure.  Any dissemination, distributions, or copying of this communication by anyone other than the intended recipient or the person responsible for its delivery is strictly prohibited.  If you have received this communication in error, please e-mail or phone the sender immediately and destroy the communication.

---

**From:** John Stembridge [mailto:john@stembridgelaw.com]
**Sent:** Wednesday, November 07, 2018 11:40 AM
**To:** LUCY HAMER <LUCY.HAMER@EEOC.GOV>
**Subject:** Crystal Lamb/Clayton County

Lucy,

I had a brief call yesterday with one of the attorneys for Clayton County.  She told me that she was going to contact you in response to your request to conciliate.  Did she contact you?  If Clayton County has rejected the request to conciliate, I would like to get the right-to-sue letter so that we can proceed with filing a lawsuit on Crystal's behalf.

Thanks,

John

John T. Stembridge
Stembridge Law, LLC

1

2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305
Office (404) 604-2691
Cell (678) 362-6567
www.stembridgelaw.com

# EXHIBIT 2

**John Stembridge**

---

**From:**       John Stembridge
**Sent:**        Tuesday, October 30, 2018 2:46 PM
**To:**          'Winston Denmark'
**Subject:**     Crystal Lamb v Clayton County Schools d/b/a Clayton County Public Schools; EEOC Charge No.
                 410-2018-04615

Winston,

We exchanged emails last spring regarding Ms. Lamb's potential claims against Clayton County Schools.  I currently represent Ms. Lamb regarding the claims in her original EEOC charge and updated charge.  Please direct any future correspondence regarding Ms. Lamb's claims to my attention.

As I am sure you know, following its investigation the EEOC made a cause finding and found that Ms. Lamb's claims have merit.  The EEOC has also reached out to your client in an attempt to conciliate and it has provided your client with the terms of conciliation.

I am reaching out to see if your client is interested in resolving Ms. Lamb's claims prior to engaging in litigation.  I look forward to hearing from you.

Thanks,

John


John T. Stembridge
Stembridge Law, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305
Office (404) 604-2691
Cell (678) 362-6567
www.stembridgelaw.com

# EXHIBIT 3



**FINCHER DENMARK LLC**
ATTORNEYS

8024 FAIROAKS COURT JONESBORO, GA 30236
T.  770.961.4100   F.  770.471.9948
WWW.FINCHERDENMARK.COM

**PARTNERS**
STEVEN M. FINCHER
WINSTON A. DENMARK
**SPECIAL COUNSEL**
SERENA L. NOWELL

**ASSOCIATES**
CHRISTA L. FREEMAN
EUGENE P. SMITH
LEONID M FELGIN
EMILIA C. WALKER
JOHN T. O'NEAL
DANIELLE M. MATRICARDI

WRITER'S LINE
770.692.2031
cfreeman@fincherdenmark.com

November 7, 2018

**SENT VIA USPS and EMAIL**
John T. Stembridge
Stembridge Law, LLC
2951 Piedmont Road
Suite 300
Atlanta, Georgia 30305

Re:    **Crystal Lamb – EEOC Charge No. 410-2018-04615**

Dear Mr. Stembridge:

As you know, this firm represents Clayton County Public Schools ("CCPS") in the above referenced matter. Despite the EEOC's determination, the District denies liability. Therefore, CCPS has decided not to conciliate this matter.

Sincerely,

Christa L. Freeman

[0294-0400/295363/2]

# EXHIBIT 4

# STEMBRIDGE LAW LLC

**Stembridge Law, LLC**
2951 Piedmont Road
Suite 300
Atlanta, Georgia 30305
404-604-2691 office
678-362-6567 cell

## FOR SETTLEMENT PURPOSES ONLY
## CONFIDENTIAL COMMUNICATION PER FRE 408

VIA ELECTRONIC MAIL (vjones@fincherdenmark.com)

November 27, 2019

Valorri Jones
Fincher Denmark LLC
8024 Fairoaks Court
Jonesboro, GA 30236

RE:    Crystal Lamb v. Clayton County School District

Dear Valorri:

I am writing to determine whether your client, Clayton County School District, has interest in resolving my client's claims prior to engaging in further discovery. Crystal is interested in meeting to discuss resolution in an attempt to resolve her claims before the parties engage in further discovery and expend substantial fees. If this is a mutual desire on the part of the Clayton County School District ("CCSD"), we would appreciate a response by December 6, 2019. As you know, after that date, we will be incurring additional and substantial fees in preparation for further discovery.

## CLAIMS

Crystal's claims and facts supporting those claims are described in her Second Amended Complaint [Doc. 29]. However, because you recently entered an appearance, I thought it might help to summarize Crystal's claims, as well as the proceedings that occurred prior to your appearance in the case.

Crystal started working as a special education teacher for CCSD with the 2017-18 school year. At the time of her hiring, she notified CCSD that she suffered from Myotonia Disorder, which affects the muscles used for movement (the skeletal muscles). While myotonia can affect any muscles, it most often affects leg muscles. On October 11, 2017, Crystal fell while trying to prevent a student from leaving the classroom, injuring her knee and ankle. After seeing a doctor approved by CCSD's worker's compensation program, Crystal was released to return to work the very next day, October 12, 2017, with limited accommodations.

Despite a release permitting her to return to work, Crystal was told by CCSD that it could not provide the requested accommodations. She wanted to return to work, but she was instructed to take a leave of absence. In late October, after being told repeatedly that she could not return to work, Crystal asked if there was any other position that would allow CCSD to provide the requested accommodations. CCSD continued to deny her attempts to return to work.

While she was on approved leave, Crystal's healthcare provider regularly provided monthly status reports showing she was able to return to work with the requested accommodations. On February 2, 2018, CCSD told Crystal that the accommodations listed in the status reports and requested by Crystal would impose an undue hardship, and instead proposed that her leave from work be extended through February 21, 2018. Shortly after, CCSD presented Crystal with three options: (1) return to work with a full release and no restrictions; (2) apply for retirement or disability; or (3) submit a voluntary resignation to CCSD. On March 12, 2018, Crystal contacted Tonya Turnipseed to let her know that she had not yet received a full release with zero restrictions but that she was ready to return to work, as had been the case since October 2017. Ms. Turnipseed informed Crystal that she could not return to work at CCSD unless she was 100% healed and gave Crystal until March 16, 2018 to let her know if her status had changed. Instead, Crystal called Derrick Gilchrist and left him a messge to let him know of the ultimatum she had been given.

On March 16, 2018, Ms. Turnipseed contacted Crystal to see if she was able to return to work with zero restrictions. Crystal let her know that her status had not changed since they spoke on March 12, and that she remained ready to return to work with the requested accommodations. On March 30, 2018, Crystal received a letter stating that her employment was being terminated for failure to provide proper notice of her recent absences.

On April 5, 2018, Crystal initiated the necessary paperwork with the EEOC to file a charge. On October 17, 2018, the EEOC issued a determination finding there was reasonable cause to that Crystal was discriminated against because of her disability, and in retaliation for seeking a reasonable accommodation, in violation of the ADA. The EEOC attempted to resolve the claims through conciliation efforts, but CCSD refused to engage in conciliation. Crystal then timely filed her complaint initiating this action on February 8, 2019.

## PROCEEDINGS

As a result of the early proceedings in this matter, we have already incurred substantial fees. I contacted your firm on October 31, 2018, to see if CCSD had interest in discussing settlement. In response, I received a letter from Christa Freeman, of your firm, dated November 7, 2018, to inform me that CCSD denies liability and had decided not to engage in conciliation. I took that response to mean CCSD had no interest in discussing settlement, either through the EEOC or directly with my firm.

In April 2019, your firm notified me that it would be representing CCSD with this lawsuit. I sent Winston Denmark, of your firm, a copy of the first amended complaint on the day it was filed and asked if he would accept service of the complaint. In response, I received a letter from Janet Scott, of your firm, to let me know that your firm would not accept service on behalf

of your client. We then had the complaint served per the federal rules, as described in my May 24, 2019 email to Ms. Scott. Although Ms. Scott had already filed an answer to the first amended complaint on May 16, 2019, she took the position that the complaint was not properly served. While I found this nonsensical, which I explained to Ms. Scott, to avoid unnecessary litigation over that issue, I again requested if your firm would acknowledge service on behalf of defendant. Yet, again, and despite the fact that an answer had been filed, Ms. Scott refused to accept service on behalf of defendant, but she did agree to contact your client to arrange a time and place for the process server to hand Dr. Beasley the summons and complaint. The costs and fees associated with service of the complaint could have easily been avoided.

On July 18, 2019, your firm filed a motion to dismiss, and on September 24, 2019, filed a motion to stay pending the Court's ruling on the motion to dismiss. In addition, your client refused to consent to Crystal's second motion to amend her complaint, which was sought in response to CCSD's motion to dismiss. The Court ultimately denied both of CCSD's motions and granted Crystal's motion. Again, both parties incurred significant fees due to the unnecessary motion practice initiated by your client, which did nothing to advance the merits of the case.

I believe the EEOC came to correct conclusion in its determination and I am confident that we will achieve the same result at trial. I understand that Crystal's case was transferred to your firm from another firm around the time the decision was made to terminate her employment. I also understand that three attorneys, who are no longer associated with your firm, handled this matter prior to you. Perhaps, nobody looked at the EEOC file or the correspondence in this case, as it is clear Crystal's requested accommodations could have easily been met – likely by just making a chair available in her classroom. However, I believe, given the exchange of information thus far, and the significant amount of fees that will be incurred once we begin taking depositions, now is a good opportunity to begin settlement discussions.

As explained above, Crystal is interested in resolving her claims without resorting to litigation. If your client is similarly interested, let me know by December 6, 2019, and we can discuss the best way to proceed.

Regards,

John T. Stembridge

cc.     Lisa Taylor
        Vicki Burton

# EXHIBIT 5

## John Stembridge

| | |
|---|---|
| **From:** | Valorri Jones <vjones@fincherdenmark.com> |
| **Sent:** | Monday, October 19, 2020 1:07 PM |
| **To:** | John Stembridge |
| **Cc:** | Lisa Taylor; Aliayah Baaith; Nikkina Speaks |
| **Subject:** | RE: Lamb |

That's fine.  Please send me a new written demand.

---

**From:** John Stembridge <john@stembridgelaw.com>
**Sent:** Monday, October 19, 2020 12:43 PM
**To:** Valorri Jones <vjones@fincherdenmark.com>
**Cc:** Lisa Taylor <lisa@stembridgelaw.com>; Aliayah Baaith <Abaaith@fincherdenmark.com>; Nikkina Speaks <nspeaks@fincherdenmark.com>
**Subject:** RE: Lamb

Valorri,

On December 10, 2019, you sent me a text message asking for a demand, and I responded that same day with a $190,000 demand. You responded that you would talk with your client, and we never received a further response. I have the text string if you would like to see it.

To be clear, the $190,000 demand is no longer on the table – it has been withdrawn. Since making that demand, we conducted multiple depositions, engaged in additional written discovery, and responded to multiple motions, including defendant's motion for summary judgment, which the Court denied. I will provide you with an updated demand, but it will be higher than $190,000.

I'll send you the draft motion for your review.

Thanks,

John

---

**From:** Valorri Jones <vjones@fincherdenmark.com>
**Sent:** Monday, October 19, 2020 12:36 PM
**To:** John Stembridge <john@stembridgelaw.com>
**Cc:** Lisa Taylor <lisa@stembridgelaw.com>; Aliayah Baaith <Abaaith@fincherdenmark.com>; Nikkina Speaks <nspeaks@fincherdenmark.com>
**Subject:** RE: Lamb

Thanks for the prompt response John.

You can prepare a joint request for an extension of time for the pretrial order.  I'm happy to sign it.

I could not remember the demand amount you requested before.  I don't recall seeing a written demand from you but if its all the same to you, I will just use your email as the demand.

I will get a counter to you after conferring with the District.

**From:** John Stembridge <john@stembridgelaw.com>
**Sent:** Monday, October 19, 2020 12:29 PM
**To:** Valorri Jones <vjones@fincherdenmark.com>
**Cc:** Lisa Taylor <lisa@stembridgelaw.com>
**Subject:** RE: Lamb

Hi Valorri,

Hope you are well. Very good timing. I've been working on the pretrial order and was going to reach out to you today about requesting a 14-day extension for filing, as I don't think I'll have my sections complete until end of this week. As you know, one of the sections requires us to address settlement discussions that we were required to have following the close of discovery. Since we did not discuss settlement at the close of discovery, I had this as an item that we need to address prior to filing the pretrial order with the Court.

Our last demand, which I sent to you on December 10, 2019, prior to taking any depositions, was $190,000. Other than letting me know you would deliver the demand, we received no response from you and your client, and that demand has since been withdrawn. I will talk with Crystal about your request for an updated demand and will get back to you, along with your request to mediate.

I will go ahead and draft a request for an extension of the deadline to file the pretrial order, and will send to you for your review. If we then agree to mediation, we can then request another extension pending the outcome of mediation.

Thanks,

John

**From:** Valorri Jones <vjones@fincherdenmark.com>
**Sent:** Monday, October 19, 2020 11:10 AM
**To:** John Stembridge <john@stembridgelaw.com>
**Subject:** Lamb

Hi John:

My client is interested in mediating this matter.  Can you send me a demand?

Get Outlook for iOS

# EXHIBIT 6



## FINCHER DENMARK LLC
### ATTORNEYS

8024 FAIROAKS COURT JONESBORO, GA 30236
T. 770.961.4100  F. 770.471.9948
WWW.FINCHERDENMARK.COM

**PARTNERS**
STEVEN M. FINCHER
WINSTON A. DENMARK
EMILIA C. WALKER

**ASSOCIATES**
JANET C. SCOTT
LEONID M. FELGIN
JOHN T. O'NEAL
DANIELLE M. MATRICARDI
CHRISTA L. FREEMAN

WRITER'S LINE
770.692.2042
jscott@fincherdenmark.com

**April 25, 2019**

**VIA ELECTRONIC AND U.S. MAIL DELIVERY**
John Stembridge, Esq.
Stembridge Law, LLC
2957 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:    **Crystal N. Lamb v. Clayton County School District d/b/a Clayton County Public Schools – Civil Action No: 1:19CV00695-WMR-JSA**

Dear Mr. Stembridge:

As you are aware, this Firm represents Clayton County Public Schools ("CCPS"). This office is in receipt of your correspondence dated April 15, 2019. Of course, neither your correspondence to this Office nor this response constitutes that service has been perfected under Georgia law. This Firm will not acknowledge service on behalf of CCPS, and strict compliance with the Georgia Civil Practice Act is required.

Sincerely,

Janet C. Scott, Esq.
Attorney for the District